**In the Matter of EVANS POTATO COMPANY, INC.**

**John R. BUTZ, Trustee In Bankruptcy, Plaintiff,**

v.

**SOHIGRO SERVICE COMPANY.**

**Bankruptcy No. 3–82–02876.
Adv. No. 3–84–0153.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Nov. 13, 1984.

John R. Butz, Trustee.

John T. Ducker, Dayton, Ohio, for defendant.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

Presently before the Court is complaint of the Trustee in Bankruptcy seeking to recover as voidable preferences two transfers to defendant Sohigro Service Company, Inc. The Court heard this matter on August 3, 1984. The following is based on the evidence adduced, on a joint stipulation of facts, and on the pleadings.

Debtor, Evans Potato Company, Inc. (hereinafter Evans Potato), has been in the business of growing, marketing and transporting potatoes since 1967. John Evans is its president and controlling shareholder.

In April, 1981, Sohigro opened a credit account in the name of Evans Potato. But in less than one year, Sohigro was forced to close this account, after the balance had been paid in full, due to unfavorable credit reports.

Almost two months later, Earl M. Evans (owner of the land, but not a corporate officer or stockholder) applied for a personal credit account with Sohigro. On his application, Earl used the address of his personal residence and indicated that it was a new application for himself, a proprietor. In the section on the application entitled "Retail Outlet Manager's Opinion," a Sohigro employee had noted, "This would be Earl Evans who owns the land, not Evans Potato." Thus, Sohigro carefully distinguished the two customers. On the basis of these facts, Sohigro approved Earl's application and opened an account in his name.

As reflected on two invoices both dated May 5, 1982, Sohigro sold goods valued at $2,754.22 to Earl. There is no doubt that the goods were picked up and used by Debtor, Evans Potato. As payment for these goods, Sohigro received from Debtor two certified checks dated July 20, and July 27, 1982. These checks are the alleged preferential transfers.

On October 27, 1982, the Evans Potato Company, Inc. filed a voluntary petition in bankruptcy under Chapter 11. Upon an application of the unsecured creditor's committee, the Court converted this case to Chapter 7 by an order dated September 27, 1983.

On May 21, 1984, the Trustee filed this complaint to recover, under 11 U.S.C. § 547, the two payments by certified checks from Debtor to Sohigro. The Trustee alleges that all five elements of a preference are present and that Earl M. Evans acted only as guarantor of the debts of Evans Potato Company.

Sohigro counters that the debt falls outside the definition of a preference found in § 547, since the transfer was not *"for or on account* of an antecedent debt *owed by the debtor,"* per § 547(b)(2), and it did not allow Sohigro to "receive more than such creditor would receive" per § 547(b)(5). On the facts, the Court agrees.

By applying for a personal line of credit with Sohigro, Earl Evans acknowledged that he alone would be responsible for ensuing debts. It was he who arranged for the purchase of the goods. It follows, then, that it is he who is responsible for

payment. It does not affect Sohigro, or the nature of the debt owed it, that Earl apparently had the goods delivered to Debtor and arranged for Debtor to pay Sohigro directly. Such an arrangement cannot change the fact that Debtor had no account with Sohigro, since it had been specifically closed months before. Having no account, Debtor could not incur a debt owing to Sohigro.[1] Numerous cases hold that there can be no preference when there is no debtor-creditor relationship. *Ellet-Kendall Shoe Co. v. Martin*, 222 F. 851 (8th Cir.1915); *In Re Kayser*, 177 F. 383 (3rd Cir.1910), *Mandel v. Scanlon*, 426 F.Supp. 519 (W.D.Pa.1977); *Ortlieb v. Baumer*, 6 F.Supp. 58 (S.D.N.Y.1934); *Hudson Valley Quality Meats, Inc.* 29 BR 67 (Bkrtcy.N.D.N.Y.1982).

The Trustee has offered no evidence to support his contention that Earl was merely acting as the guarantor of Debtor's indebtedness. Rather, the evidence before the Court shows that Earl acted as an individual and not as a guarantor. Neither his credit application nor the invoices mention a possible guaranty relationship. Further, Sohigro was clear in showing that it had wanted no further business dealings with Debtor by closing Debtor's account and later by extending credit to "Earl Evans who owns the land, not Evans Potato."

Assuming, *arguendo*, that Earl by some oral or tacit arrangement with John was guarantor or even *alter ego*, Sohigro was neither privy to nor bound by such an undisclosed arrangement.

The fact that the Debtor paid the account gave the Trustee good reason to scrutinize and carefully probe into the transaction, since the purchase obviously was made by Earl for the benefit of the Debtor after its credit with Sohigro had been terminated. Unfortunately, Earl was never called to testify by either of the litigants as to his connection with the Debtor. If Sohigro was a participant in a subterfuge, there has been no evidence submitted of such fact.

1. Debtor owed Earl for the goods, but just bypassed paying Earl by directly paying Sohigro.

Thus, since property of the Debtor was not transferred to a creditor of the Debtor, the Trustee's complaint as to a preference must be denied.

However, the Court is constrained to give further consideration to this case concerning a possible fraudulent transfer, although not argued by the parties. Section 548(a) provides that

"The trustee may avoid any transfer of interest of the debtor in property, or any obligation incurred by the debtors that was made or incurred on or within one year before the date of filing of the petition, if the debtor:

\*      \*      \*      \*      \*      \*

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation and

(B)(i) was insolvent on the date such transfer was made or such obligation as incurred, or became insolvent as a result. . . ."

Section 548(c) provides an exception to the voidability of fraudulent transfers in favor of a "transferee or obligee of such a transfer or obligation that takes for value and in good faith."

The general rule is that payment of or assumption of a third party's debt by an insolvent is a transfer without fair consideration and is thus fraudulent. *In Re BF Bldg. Corp.* 312 F.2d 691 (6th Cir.1963). Collier states that "transfers made to benefit third parties are clearly not made for a fair consideration or for value unless the debtor is also benefitted." 4 Collier on Bankruptcy, ¶ 548.09 at p. 548–103 (15th ed.). Courts have thus focused on whether the debtor benefitted by receiving fair consideration or, using the statutory language, whether the debtor received reasonably equivalent value for its transfer. ("Value" is defined in 11 U.S.C. § 548(d)(2)(A) as property or satisfaction or securing of a present or antecedent debt of the debtor.)

If an action for recovery of a preference were to lie, it would seem to lie against Earl.

In *Mandel v. Scanlon*, 426 F.Supp. 519 (W.D.Pa.1977), the court held there would be fair consideration for the Debtor's payment of its subsidiary's creditor because the Debtor had an interest in settling a lawsuit brought against its subsidiary.

Similarly, in *Mayo v. Pioneer Bank & Trust Co.*, 270 F.2d 823 (5th Cir.1959), the court deemed it necessary to use its equitable powers to hold that payment by the bankrupt corporation of its president's personal debt (i.e. loan) was with fair consideration because the loan money was turned over to the Debtor corporation for its benefit.

In *B–F Bldg. Corp. v. Coleman*, 312 F.2d 691 (6th Cir.1963) the debtor, B–F Bldg., Corp., and its lessee, Baird Foerst, who is also bankrupt, had the same president. B–F entered into a land purchase contract, and needed $10,000 to complete its down payment. Baird Foerst borrowed $10,000 in exchange for an unsecured demand promissory note and gave this money to B–F for the down payment. Later in an attempt to pay off Baird Foerst's debt, B–F assigned $10,000 out of escrow funds to be paid to the lending bank. Baird Foerst's note was then returned to Baird Foerst. The court held that the Debtor's assignment of the $10,000 was without fair consideration:

> "In the case before us, *the most that the evidence shows is that an antecedent debt of Baird-Foerst was satisfied.* While under certain circumstances such a transaction might be considered as fair consideration, for instance, if the payment was part of a good faith novation agreement, *Barr & Creelman Mill & Plumbing Supply Co. v. Zoller*, 109 F.2d 924, 926 (C.A.2, 1940), we are satisfied on the record here that the referee was justified in finding that it was not. *The only thing the bank gave for B–F's demand note, its full face amount secured by assignment of the escrow cash, was an unsecured and probably worthless note of Baird-Foerst.* The absence of "good faith", one of the essential ele-

ments in the definition of fair consideration, is manifest on the record.

> The question of whether consideration is fair is one of fact and one to which considerable weight is given to the findings made by the trier of the facts. *In re Peoria Braumeister Co.*, 138 F.2d 520, 523 (C.A.7, 1943); *Roth v. Fabrikant Bros., Inc.*, 175 F.2d 665, 668 (C.A.2, 1949). We will not set aside a referee's findings, affirmed by a District Judge, in the absence of a clear showing of mistake. *Hilliard v. Hollins*, 290 F.2d 263, 265 (C.A.6, 1961). No such showing has been made here."

Id. at 694. (Emphasis applied).

It is apparent from this decision that the Court affirmed the finding of the trier of fact that there was no "fair consideration" because it was bound by the "good faith" requirement in the definition of "fair consideration" in former section 76(d)(1)(e), a requirement now deleted from 11 U.S.C. § 548(a)(2)(A).

■ In the case at bar, Evans Potato Co. did receive fair consideration for payment of Earl M. Evan's debt: it had exclusive use of the goods sold by Sohigro. Thus, it received a reasonably equivalent value in exchange for its transfer, as required by § 548(a)(2)(A).

Hence there is now no purpose to consider the second element of 11 U.S.C. § 548(a)(2), whether the transfer either was made while Evans Potato was insolvent or thereby rendered insolvent, despite very strong indications thereof.