In re JEFFREY BIGELOW
DESIGN GROUP, INC.

John H. HARMAN, Trustee,

v.

FIRST AMERICAN BANK OF MARY-
LAND, Ann Donatelli, Louis D.
Donatelli, Donatelli and Klein.

Civ. No. B–90–1601.
Bankruptcy No. 87–4–3581.

United States District Court,
D. Maryland.

Feb. 13, 1991.

John H. Harman, Silver Spring, Md., for plaintiff.

Brian F. Kenney, Fairfax, Va., Linda V. Donhauser, Baltimore, Md., Donald Hadley, Bethesda, Md., Linda G. Griffith, Wendy D. Pullano, Rockville, Md., Stanton J. Levinson, Bethesda, Md., for defendants.

## MEMORANDUM OPINION

WALTER E. BLACK, Jr., Chief Judge.

Presently pending before the Court is an appeal by the trustee for the estate of the Jeffrey Bigelow Design Group, Inc. ("debtor") from the decision of the United States Bankruptcy Court for the District of Maryland and cross-appeals by appellees First American Bank of Maryland ("First American"), Ann Donatelli, Louis T. Donatelli, and Donatelli and Klein, Inc. ("Donatelli and Klein"). This appeal arises from the trustee's attempt to recover payments made by the debtor to First American as preferential payments under Bankruptcy Code § 547(b) or as fraudulent transfers under § 548(a)(1) or (a)(2).

In September, 1985, Donatelli and Klein acquired 50 percent of the stock of the debtor in exchange for a cash payment and the arrangement of a line of credit with First American. The initial line of credit was $250,000.00 but the parties rolled over that note into increasing amounts until the credit line was for $1,000,000.00. Ann and Louis Donatelli personally guaranteed that credit line. Although Donatelli and Klein was the maker of the note, the debtor received all draws on the credit line and made interest payments directly to First American. In February, 1986, the debtor executed a note for $1,000,000.00 to Donatelli and Klein with substantially the same terms as the note from Donatelli and Klein to First American. Thereafter, each payment the debtor made to First American reduced the debtor's liability on its note to Donatelli and Klein by a like amount.

Donatelli and Klein executed a second note for $125,000.00 for the benefit of the debtor in June, 1987. Ann and Louis Donatelli personally guaranteed that note. Throughout the period of 1986–1987, during most of which the debtor was insolvent, it continued to make payments to First American on the Donatelli and Klein lines of credit. Those payments totalled $109,-667.63 for 1987, and the payments in the 90 days prior to the filing of the bankruptcy petition totalled $25,575.16. The debtor filed its petition in bankruptcy under Chapter 7 on December 22, 1987.

The trustee filed a complaint in August, 1988, alleging that payments made by the debtor to First American within 90 days of the bankruptcy petition were preferences under § 547. The trustee amended the complaint in July, 1989, to add defendants and to state a claim to set aside all transfers from the debtor to First American in 1987 as fraudulent transfers under § 548. With the consent of the court, the trustee again amended the complaint in December, 1989, in order to correct certain allegations in the complaint and add claims for payments from the debtor to First American not included previously. The case was tried before the bankruptcy court on January 31 and March 12, 1990. At the close of the evidence, the trustee moved to amend the complaint a third time to include a claim to set aside as insider preferences transfers made between 90 days and one year prior to bankruptcy. The bankruptcy court denied that motion.

The court ultimately ruled that none of the payments at issue were fraudulent transfers under Bankruptcy Code § 548, that the payments made in the 90 days prior to bankruptcy by the debtor to First American were preferences under § 547(b), and that these preferential payments were not made in the ordinary course of business under § 547(c)(2).

On appeal the trustee raises three issues: (1) that the bankruptcy court erred in denying his motion to amend the complaint at the close of the evidence to bring a new claim for preferential payments going back one year under § 547(b)(4)(B); (2) that the

bankruptcy court erred in dismissing counts II, III, and IV of the complaint relating to fraudulent transfers under § 548; and (3) that the bankruptcy court's finding that the debtor had received reasonably equivalent value in exchange for the payments at issue under § 548(a)(2)(A) was clearly erroneous.

In the appellees' cross-appeals, they argue that the bankruptcy court erred in ruling that the four payments made in the 90 days before filing were not in the ordinary course of business.

■ Bankruptcy Rule 8013 establishes the appropriate standard of review in this case, stating,

[o]n an appeal the district court ... may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

When a bankruptcy court's legal conclusions are challenged, the district court must make an independent determination of the applicable law. *In re Tesmetges*, 47 B.R. 385, 388 (E.D.N.Y.1984). Otherwise, a bankruptcy court's decision will not be set aside unless there was plain error or abuse of discretion. *In re Ken Boatman, Inc.*, 359 F.Supp. 1062 (W.D.La.1973).

### I

■ Appellant first asserts that the bankruptcy court erred by denying his motion to amend the complaint at the close of the evidence to include in the preferential payment claim all payments made by the debtor to First American between 90 days and one year before the date of filing of the petition in bankruptcy under § 547(b)(4)(B).

Bankruptcy Rule 7015 incorporates Rule 15 of the Federal Rules of Civil Procedure for amended and supplemental pleadings in adversary bankruptcy proceedings. Rule 15(a) states that, after a responsive pleading is served, a party may amend its pleadings "only by leave of court or by written consent of the adverse party" and "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). However, "leave to amend is not to be granted automatically" and "disposition of a motion to amend is within the sound discretion of the ... court." *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir.1987). Furthermore, the court may deny a motion to amend under Rule 15(a) "where the motion has been unduly delayed and where allowing the amendment would unduly prejudice the non-movant." *Id.*

The bankruptcy court found the motion to amend was unnecessarily late because the trustee had months prior to trial to make the motion, during which time he knew or should have known of the existence of the insider claim (March 12, 1990, Tr. at 19–20). Furthermore, the court found that the proposed amendment would severely prejudice the defendants' ability to mount a defense at that late point in the proceedings (March 12, 1990, Tr. at 20).

The amendment at issue here was the third amendment sought by the trustee and came at the close of all the evidence. At that time, he attempted to make a new claim to set aside all payments by the debtor between 90 days and one year before the date of filing of the bankruptcy petition as preferential payments to an insider under § 547(b)(4)(B). Although the debtor made the payments directly to First American, which is not an insider, the trustee argued that the payments were avoidable because they benefited Donatelli and Klein, which is an insider. Each payment the debtor made to First American reduced the debt Donatelli and Klein had incurred to First American. The trustee relied upon the holding in *Levit v. Ingersoll Rand Financial Corp.*, 874 F.2d 1186 (7th Cir.1989), which adopted this theory extending preference recovery and argued that the amendment would cause appellees no prejudice because the evidence of preference payments going back one year duplicated the evidence presented at trial concerning fraudulent transfers.

Appellees contended that they had not anticipated the claim, nor had they pre-

pared a defense on the new claim. They proffered that if they had anticipated the motion to amend, they would have presented additional evidence establishing a § 547(c) "ordinary course of business" defense to each payment made in the one year period, rather than just those payments made in the 90 days before the debtor filed its bankruptcy petition. In addition, defendants made three salient points: courts are split on the validity of the insider preference theory of recovery adopted in *Levit;* the Fourth Circuit and this Court have not yet recognized such a theory of recovery; and the parties here never briefed this issue during the trial in the bankruptcy court. For all these reasons, defendants argued that permitting the motion to amend at such a late point in the proceedings would prejudice their ability to raise a defense.

Based on the record before it, the Court concludes that the bankruptcy court's findings of undue delay and severe prejudice to defendants under these circumstances were not clearly erroneous. The Court observes that the bankruptcy court recessed for six weeks between the start and finish of the trial, and at no time during that recess did the appellant move to amend the complaint. As noted by the court in *Deasy v. Hill,* "the burden rests primarily upon the plaintiff to amend his complaint, not upon the defendant to anticipate a new claim." *Id.* at 41. The Court concludes, therefore, that the bankruptcy judge did not abuse his discretion in denying the trustee's motion to amend.[1]

## II

■ Appellant's second issue is that the bankruptcy court erred in dismissing counts II, III, and IV of the complaint which allege that the payments made by the debtor to First American within one year of the filing of the bankruptcy petition were fraudulent transfers under § 548(a)(1).

In this case, defendants moved to dismiss these fraudulent transfer claims after all parties had presented their evidence. Thus, the bankruptcy court had the benefit of hearing all the evidence, as well as oral argument on the motion.

To state a claim under § 548(a)(1), the trustee must prove "actual intent to hinder, delay, or defraud" on the part of the debtor. The bankruptcy court found not a scintilla of evidence of actual fraud under § 548(a)(1) (March 12, 1990, Tr. at 36).

At trial, the trustee argued that three pieces of evidence supported the allegation of actual intent to hinder, delay, or defraud. First, the trustee pointed out that the transactions involved insiders who were benefited by the transfers. Second, the trustee argued that the insiders concealed the true nature of the transaction. Third, the trustee pointed to the debtor's indisputable insolvency during much of the period at issue.

Although the evidence clearly demonstrates that the transactions at issue in this case involved insiders, the trustee presented no evidence that the parties chose this particular financial arrangement to hinder, delay, or defraud other creditors. In fact the evidence shows that the primary reason that Donatelli and Klein was the intermediary for the loan from First American to the debtor is that no bank would lend the debtor funds in its financial condition. As the bankruptcy court noted, the defendants in this matter may have made a financially disastrous business investment by putting money into the debtor's business; but this fact alone did not support a finding that defendants had actual intent to hinder, delay, or defraud other creditors.

The trustee also argued that because the loan was carried on debtor's books as a loan from First American and the debtor's own accountant did not know that the debtor's loans came through Donatelli and Klein, and not directly from the bank, the parties attempted to conceal the true nature of the transaction. The evidence in fact demonstrates, however, that all parties to the transaction understood the important

---

1. *See* IV, *infra,* and the legal analysis therein which indicates that, in all likelihood, the trustee's reliance on the insider preference theory would not have prevailed in any event.

fact that the bank was lending money to the debtor on the strength of the credit of Donatelli and Klein. The debtor's accountant admitted on cross examination that the structure of the loan transaction would have made little difference from an economic or accounting perspective. Further, the trustee presented no evidence that any of the insiders attempted to actively conceal the nature of the transactions from anyone, including other creditors.

Finally, the fact that the debtor was insolvent at the time these transactions took place, under these circumstances, is not evidence of intent to hinder, delay, or defraud. All of the testimony at trial proved that the loans were an attempt by the defendants to increase the revenues of the debtor and expand its market. Such efforts, had they been successful, would have greatly benefited all the debtor's creditors. The law will not penalize these defendants simply because they were not successful.

Consequently, this Court finds that the evidence did not support a finding of actual intent to hinder, delay, or defraud any creditor under § 548(a)(1) and that the bankruptcy court's dismissal of counts II, III, and IV was not an abuse of discretion.

### III

■ The third issue presented on appeal by the trustee is that the bankruptcy court erred in finding the debtor had received "reasonably equivalent value" under § 548(a)(2).

The trustee must show that the debtor "received less than reasonably equivalent value" in exchange for the property the debtor transferred while insolvent in order to set aside transfers as fraudulent under § 548(a)(2). The bankruptcy court found that the debtor received more than $1,000,000.00 from First American Bank over the course of a two-year period, and in return the debtor paid $109,667.63 in interest and principle to First American in 1987. On these facts, the bankruptcy court concluded that the debtor had received "fair consideration" (March 12, 1990, Tr. at 39).

On appeal the trustee argues that, because the debtor was not indebted to the bank, it did not receive *any* value for its payments to the bank.

Section 548(a)(2) serves the purposes of preserving the debtor's estate for the benefit of its creditors. *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 991 (2d Cir.1981). The requirement that the debtor receive "reasonably equivalent value" for transfers prevents the debtor from divesting itself of valuable assets in an attempt to place property beyond the reach of creditors in the year prior to filing a bankruptcy petition. *Id.* at 989. The question presented by this case, however, is not whether the value received was equivalent but if, under the circumstances of this particular tripartite financial transaction, the debtor received any value at all.

Other courts have concluded that the fact that value flowed to the debtor through a third party does not necessarily bar a finding that the debtor received reasonably equivalent value. *See Rubin*, 661 F.2d at 993; *In re Holly Hill Medical Center, Inc.*, 44 B.R. 253, 255 (Bkrtcy.M.D.Fla.1984); *In re Evans Potato Co.*, 44 B.R. 191, 194 (Bkrtcy.S.D.Ohio 1984). In each of these cases, a third party arranged or secured a loan for the benefit of the debtor. In each case, the court looked past the technical arrangement of the transaction and focused on whether the debtor received the *benefit* of the "value." If the debtor ultimately received the benefit or exclusive use of the "value," regardless of the technical financing arrangements, then the debtor had received "reasonably equivalent value" for the purpose of § 548(a)(2).

As found by the bankruptcy court in this case, the facts show that the debtor paid $109,667.63 in interest to First American in 1987. The debtor received in return the benefit of $1,125,000 in loans from First American to Donatelli and Klein between 1985 and 1987. In fact, First American transferred the money directly to the debtor so that Donatelli and Klein never had use of the funds. Under the circumstances of this financial arrangement, the Court concludes that the bankruptcy court properly found that the debtor had received reasonably equivalent value in exchange

for the payments it made to First American in 1987.

## IV

Appellees in their cross-appeals argue that the bankruptcy court erred in finding that the four preference payments made within 90 days before the filing of the bankruptcy petition were not in the ordinary course of business.

Under § 547(c)(2), the trustee may not avoid a transfer as a preference if it was "in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; made in the ordinary course of business or financial affairs of the debtor and the transferee; and made according to ordinary business terms."

Appellees presented uncontroverted evidence that payments made by the debtor to First American within 90 days of the filing of the bankruptcy petition were for interest on the Donatelli and Klein loan. Appellees directed the bankruptcy court's attention to *In re Smith–Douglass, Inc.*, 842 F.2d 729 (4th Cir.1988), in which the Fourth Circuit held that payments of interest are incurred as they become due each month and, therefore, are "ordinary course of business" payments. Appellees also presented evidence that the interest payments were generally made within 60 days of the date they were due and at regular intervals. Finally, trial testimony by First American employees indicated the bank regularly accepts interest payments up to 60 days late.

The trustee argued simply that the payments could not be in the ordinary course of business of the debtor and the bank because the tripartite financial arrangement resulted in the debtor and the bank having no financial relationship at all.

The bankruptcy court found that the payments were preferences and were not in the ordinary course of business "because there was no business relationship, in fact, between the debtor and First American Bank." This Court disagrees.

The Fourth Circuit has expressly held in *Smith–Douglass, supra,* that the payment of interest as it comes due is made in the ordinary course of business. The issues then are only whether the payments made by the debtor to First American were made according to the ordinary course of affairs between these parties and according to ordinary business terms.

The term "ordinary course of business or financial affairs of the debtor and the transferee" refers to the established pattern of dealings between the particular parties. *See In re Fulghum Construction Corp.,* 872 F.2d 739 (6th Cir. 1989). In affirming that the bankruptcy court was correct in finding the debtor had received "reasonably equivalent value" for its payments to First American, this Court looked beyond the tripartite structure of the financial arrangements to the true nature of the transaction between the debtor and First American. The same reasoning applies here.

In a strict technical sense, the debtor and the bank may not have had a typical debtor-creditor relationship. The evidence establishes, however, that the bank loaned a substantial sum to Donatelli and Klein for the exclusive benefit of the debtor, and the debtor paid interest directly to the bank at regular intervals throughout 1987. The Court finds that the payments made by the debtor to First American in the 90 days prior to the filing of the bankruptcy petition were made in the ordinary course of business dealings between these parties.

Finally, the tripartite arrangement established by these parties, although perhaps not commonplace, has been discussed and analyzed by other courts. *See Rubin, Holly Hill,* and *Evans Potato, supra.* The Court therefore concludes that the transfers here at issue lie within the bounds of transfers "made according to ordinary business terms."

Consequently, the payments made by the debtor to First American in the 90 days prior to the filing of the bankruptcy petition were made in the ordinary course of business, and the bankruptcy court's determination of the meaning of "ordinary course of business" in this respect was

incorrect. Therefore, the trustee may not set aside these transfers.

For the foregoing reasons, this Court affirms the bankruptcy court's denial of the trustee's motion to amend the complaint, the dismissal of counts II, III, and IV of the complaint, and the court's finding that the debtor had received reasonably equivalent value under § 548(a)(2). The Court reverses the bankruptcy court's finding that the debtor's transfers within 90 days of the bankruptcy filing were not in the ordinary course of business.

### ORDER

Presently pending before the Court is an appeal by the trustee for the estate of Jeffrey Bigelow Design Group, Inc. from the decision of the United States Bankruptcy Court for the District of Maryland and cross appeals by First American Bank of Maryland, Ann Donatelli, Louis D. Donatelli, and Donatelli and Klein, Inc. The issues raised have been fully briefed and the Court had the benefit of oral argument at a hearing held on October 26, 1990. In accordance with the accompanying Memorandum Opinion filed today, IT IS, this 13th day of February, 1991, by the United States District Court for the District of Maryland,

ORDERED:

(1) That the Orders of the United States Bankruptcy Court for the District of Maryland entered in these proceedings on March 28, 1990, and April 27, 1990, BE, and the same hereby ARE, AFFIRMED IN PART and REVERSED IN PART as follows:

(a) that the judgment entered by the Bankruptcy Court in favor of the trustee John H. Harman against First American Bank of Maryland in the sum of $25,575.18 and the judgment entered by the Bankruptcy Court on the crossclaim in favor of First American Bank of Maryland against Ann Donatelli, Louis T. Donatelli, and Donatelli and Klein, Inc. in the sum of $25,575.18 plus attorneys' fees of 25 percent BE, and the same hereby ARE REVERSED; and

(b) that the aforesaid Orders BE, and the same hereby ARE, AFFIRMED in all other respects;

(2) That the Bankruptcy Court shall enter a final order in conformity with this Memorandum Opinion and Order.