**In re Danelle A. DUPUIS, Debtor.**

**John J. Hunter, Trustee, Plaintiff,**

**v.**

**Geoffrey A. Dupuis, Defendant.**

**Nos. 00–3188, 00–31340.**

United States Bankruptcy Court, N.D. Ohio.

March 19, 2001.

Elliot H. Feit, Toledo, OH, for debtor.

### DECISION AND ORDER

RICHARD L. SPEER, Chief Judge.

In the above captioned adversary complaint, John J. Hunter, the duly appointed trustee of the Debtor's bankruptcy estate, seeks to recover certain preferential transfers made by the Debtor, Danelle A. Dupuis, to the Defendant, Geoffrey A. Dupuis. The operative facts which give rise to this dispute are briefly as follows:

On August 20, 1999, the marriage between the Defendant and the Debtor was terminated by a Judgment Entry of Divorce entered by the Lucas County Court of Common Pleas. Contained in the Court's Entry of Divorce were the following provisions dealing with the disposition of the Parties' marital home:

**It is Further Ordered, Adjudged and Decreed** that [Danelle A. Dupuis] shall pay to [Geoffrey A. Dupuis] the amount of $15,000.00 within one year of the date of the final hearing as and for his share of the equity in the marital home. [Danelle A. Dupuis] thereafter shall immediately refinance said marital home to remove [Geoffrey A. Dupuis]'s name from the mortgage and hold him harmless therefrom. If [Danelle A. Dupuis] is unable to refinance the home and/or fails to pay the $15,000.00 within one year, the martial home shall immediately be listed for sale and the proceeds are to be split equally between the parties.

**It is Further Ordered, Adjudged and Decreed** that [Geoffrey A. Dupuis] shall vacate the marital home within sixty (60) days upon receipt of the $15,000.00 from [Danelle A. Dupuis].

**It is Further Ordered, Adjudged and Decreed** that each party shall be responsible for one-half (½) of the expenses of the martial home while residing together, including the mortgage, electric, gas, phone, sewer and cable bills.

In compliance with the first of the above-stated provisions, the Debtor paid to the Defendant certain sums of money, to wit: the sum of One Thousand Five Hundred dollars ($1,500.00) on August 21, 1999; the sum of Ten Thousand dollars ($10,000.00) on October 29, 1999; and the sum of Three Thousand dollars ($3,000.00) on February 5, 2000. While these transactions were taking place, the Trustee avers that the Defendant, as permitted under the terms of the Parties' Entry of Divorce, continued to live in the Parties' marital home. In addition, the Trustee alleges that while living in the Parties' marital home, the Defendant paid one-half (½) of the Parties' living expenses as was required under the terms of the Parties' Judgment Entry of Divorce.

On April 4, 2000, the Debtor petitioned this Court for relief under Chapter 7 of the United States Bankruptcy Code. Thereafter, on August 9, 2000, the Trustee commenced the instant adversary proceeding seeking to recover, as a preference, the three above-mentioned transfers made by the Debtor to the Defendant. The statutory authority upon which the Trustee relies for his cause of action is 11 U.S.C. § 547(b) which provides that:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property–

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made–

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if–

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

On this cause of action, the Trustee filed a Motion for Summary Judgment, and Memorandum in Support. No Response or Memorandum in Opposition, however, was filed by the Defendant.

## LEGAL ANALYSIS

■ One of the primary purposes of the Bankruptcy Code is to ensure the equal treatment of similarly situated creditors. *Gill v. Winn (In re Perma Pacific)*, 983 F.2d 964, 968 (10th Cir.1992). To this end, a bankruptcy trustee may avoid preferential transfers of property made by the debtor to a third party if these five (5) conditions are met: (1) the transfer was "to or for the benefit of a creditor"; (2) the transfer was "for or on account of an antecedent debt"; (3) the transfer was "made while the debtor was insolvent"; (4) the transfer was made within ninety (90) days of the filing of the debtor's bankruptcy petition, or within one (1) year of the filing

of the petition if the debtor was an "insider" within the meaning of 11 U.S.C. § 101(31); and (5) the transfer enables the creditor to receive more than he would have received if the transfer had not been made and the debtor's assets had been liquidated under Chapter 7 of the Code. 11 U.S.C. § 547(b)(1)-(5); *Stewart v. East Tennessee Title Ins. Agency, Inc. (In re Union Security Mortgage Co.)*, 25 F.3d 338, 340 (6th Cir.1994). With respect to these requirements, it is the Trustee's burden to establish the existence of each of them by a preponderance of the evidence. 11 U.S.C. § 547(g); *Field v. Lebanon Citizens National Bank (In re Knee)*, 254 B.R. 710, 712 (Bankr.S.D.Ohio 2000). In addition, as the instant cause of action comes before the Court upon the Trustee's Motion for Summary Judgment, the Court may only enter judgment for the Trustee if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making this determination, the Court is directed to look at all the facts in the light most favorable to the Defendant while giving him the benefit of all rational inferences. FED. R. BANKR. P. 7056; *Vance v. Spencer County Public Sch. Dist.*, 231 F.3d 253, 258 (6th Cir.2000).

In response to the Trustee's Complaint, the Defendant, in his Answer, put forth what are essentially three different affirmative defenses to the Trustee's assertion of a preferential transfer under § 547(b). First, the Defendant denied that the above-stated transfers were accomplished as the result of any debtor-creditor relationship that existed between him and the Debtor; thus ostensibly negating the first

and second elements of the preferential transfer test contained in § 547(b). The Defendant's second affirmative defense against the Trustee's preference action holds that no "insider" relationship existed between him and the Debtor at the time the transfers at issue herein were made. Accordingly, the Defendant maintains that as the first two of the above-enumerated transfers occurred more than ninety (90) days prior to the time the Debtor filed for bankruptcy relief, such transfers cannot be recovered as a preference under § 547(b). Finally, the Defendant denies, in contravention to the third element of the preferential test, that the Debtor was insolvent at the time the transfers between him and the Debtor took place. The Court will now address each of these issues in turn.[1]

## The Existence of a Debtor–Creditor Relationship

█ It is axiomatic that before a transfer of property may be found to be a preference for purposes of § 547(b), the underlying transfer must have been made on account of a debtor-creditor relationship. *Tidwell v. Galbreath (In re Galbreath)*, 207 B.R. 309, 324 (Bankr.M.D.Ga. 1997) (a gift from one party to another is not a preferential transfer); *Butz v. Sohigro Service Co. (In re Evans Potato Co., Inc.)*, 44 B.R. 191, 193 (Bankr.S.D.Ohio 1984) (citing multiple cases, which stand for the proposition that there can be no preference when there is no debtor-creditor relationship under § 547(b)). Paragraphs one (1) and two (2) of the preferential transfer test contained in § 547(b) set forth this principle by providing that a transfer is only preferential if it is made "to or for the benefit of a creditor" "on account of an antecedent debt owed by the debtor before such transfer was made[.]"

11 U.S.C. § 547(b)(1)/(2). In opposition to the Trustee's compliance with these elements, and in support of his assertion that the transfers at issue herein did not create a debtor-creditor relationship, the Defendant, in his Answer to the Trustee's Complaint, denies that he was a creditor within the meaning of the Bankruptcy Code.

The Bankruptcy Code defines a "creditor" as any "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor[.]" 11 U.S.C. § 101(5). A "debtor," on the other hand, is simply defined as a "person … concerning which a case under this title has been commenced." 11 U.S.C. § 101(13). Thus, pursuant to these definitions, a creditor-debtor relationship will be found to exist when an entity holds a "claim" against any person(s) who has commenced a case under Title 11 of the United States Code, the operative word in this instance being "claim."

█ For purposes of the Bankruptcy Code, a "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5). Conversely, a "debt," which is simply a claim from the perspective of the debtor, is defined as "liability on a claim." 11 U.S.C. § 101(12). These definitions, in order to promote the fresh-start policy of the Bankruptcy Code, are given an expansive and broad interpretation. *Grynberg v. U.S. (In re Grynberg)*, 986 F.2d 367, 371 (10th Cir.1993), *cert. denied*, 510 U.S. 812, 114 S.Ct. 57, 126 L.Ed.2d 27 (1993); *Gibson v. Gibson (In re Gibson)*, 219 B.R. 195, 200, 205 (6th Cir. BAP 1998). As stated

---

1. It should be noted for the record that the Defendant does not contest the applicability of the requirement set forth in § 547(b)(5).

by the Supreme Court of the United States: these definitions "reflec[t] Congress' broad ... view of the class of obligations that qualify as a 'claim' giving rise to a 'debt'[.]" *Cohen v. de la Cruz*, 523 U.S. 213, 218, 118 S.Ct. 1212, 1216, 140 L.Ed.2d 341 (1998); *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 558, 110 S.Ct. 2126, 2130–31, 109 L.Ed.2d 588 (1990). To this end, federal, and not state law controls the issue of whether a "claim," and therefore by implication a debtor-creditor relationship, exists in bankruptcy.[2] In this respect, it has been clearly held that those obligations which result from a state court divorce decree give rise, under the Bankruptcy Code, to both a "claim" and a "debt," thus, by definition, creating between the Parties a debtor-creditor relationship. *Townsend v. Townsend (In re Townsend)*, 155 B.R. 235, 237–38 (Bankr.S.D.Ala.1992).

In opposition to this principle, the Defendant argues that no debtor-creditor relationship should be found to exist under the particular facts of this case because the Debtor could have simply permitted the Parties' marital residence to be put on the market, and then sold, with the Defendant thereafter receiving his proportionate share of equity in the property. Specifically, the Defendant, in his Answer, stated:

the transfer alleged was pursuant to a court Order and constituted a purchase by [Danelle A. Dupuis] of [Geoffrey A. Dupuis'] ownership rights in the equity of their jointly owned real estate. [Da-

nelle A. Dupuis] had the option to purchase his share or sell the property and divide the proceeds. [Danelle A. Dupuis] owned dependent nothing but the duty to comply with the court order.

After considering this argument, however, the Court can see no reason why the Debtor's option to sell the Parties' marital property would preclude the Defendant from holding a "claim" in the Debtor's bankruptcy case. In coming to this conclusion, the Court agrees with the Defendant that the Debtor's obligation to pay him under the state court's entry of divorce was not absolute. However standing alone, such a consideration does not mean that a debtor-creditor relationship did not exist between the Debtor and the Defendant, because as just explained, a "claim" will be found to exist in a bankruptcy case even where the underlying obligation is unliquidated, contingent, unmatured, and equitable in nature. Moreover, the Court notes that by the Defendant's logic, if the Debtor had failed to pay him for his equity in the Parties' marital home, the Defendant would not have been able to assert a "claim" against the Debtor's bankruptcy estate, a result clearly at odds with broad scope afford to the word "claim" under the Bankruptcy Code. *See discussion supra; see also Jensen v. California Dep't of Health Services (In re Jensen)*, 127 B.R. 27 (9th Cir. BAP 1991) (the definition of claim contemplates that all legal obligations of the debtor, no matter how re-

---

**2.** This is not to say that the application of state law is not an important factor in determining whether a claim, for purposes of the Bankruptcy Code, exists. In fact, given the definition of a claim as set forth in the Bankruptcy Code, any party who holds a legally recognized state claim would almost, without exception, have a "claim" for purposes of the Bankruptcy Code. However, a party's interest may be categorized as a "claim," within the context of a bankruptcy case, even if such

a claim would not be recognized under state law. This is exemplified by the fact that under the Bankruptcy Code's definition of a "claim," any right to payment or other equitable relief is considered a claim, regardless of whether or not that right is unmatured or unliquidated. On the other hand, and in most instances, state statutes only recognize claims that have matured or which have otherwise been liquidated. *Corman v. Morgan (In re Morgan)*, 197 B.R. 892, 896 (N.D.Cal.1996).

mote or contingent, will be able to be dealt with in the bankruptcy case). Thus, it is this Court's position that with regards to the Defendant and the Debtor's former marital home, a debtor-creditor relationship was created by the Parties' judgment entry of divorce. Accordingly, the Court holds that the Trustee, as a matter of law, has met his burden with respect to the first and second elements of the preferential transfer contained in 11 U.S.C. § 547(b).

**The Defendant's Status as an Insider**

Section 547 of the Bankruptcy Code authorizes a bankruptcy trustee to avoid a preferential transfer only when the transfer is made within a certain period of time prior to the debtor filing for bankruptcy relief. In the case where the creditor is not an "insider," this time period is ninety (90) days. 11 U.S.C. § 547(b)(4)(A). However, when the creditor is deemed to be an "insider," this time period is extended to one (1) year. 11 U.S.C. § 547(b)(4)(B). In this case, with regards to the three (3) transfers the Trustee seeks to avoid, it is undisputed that the Debtor's last transfer of Three Thousand dollars ($3,000.00) occurred within the ninety (90) day preference period provided for in § 547(b)(4)(A). Accordingly, only the initial two transfers made by the Debtor are affected by whether the Defendant's relationship vis-a-vis the Debtor can be categorized as an "insider" relationship for purposes of § 547(b)(4)(B).

■ The term "insider" is defined by the Bankruptcy Code in Section 101(31), and states in relevant part:

In this title–

 (30) "insider" includes–

 (A) if the debtor is an individual–

 (i) relative of the debtor or a general partner of the debtor[.]

For purposes of this section, the term "relative" is also defined by the Bankruptcy Code and encompasses any "individual related by affinity or consanguinity within the third degree as determined by the common law, or individual in a step or adoptive relationship within such third degree[.]" 11 U.S.C. § 101(45). Under Ohio law, spouses are related to each other by affinity. *Kest v. Lewis,* 169 Ohio St. 317, 319, 159 N.E.2d 449, 450 (Ohio 1959) (affinity is "the connection existing, in consequence of marriage, between each of the married persons and the kindred of the other."). Thus, a spouse is, by definition, an "insider" for purposes of § 101(31). *Bucki v. Singleton (In re Cardon Realty Corp.),* 146 B.R. 72, 77 (Bankr.W.D.N.Y. 1992); *compare Barnhill v. Vaudreuil,* 177 B.R. 153, 157–59 (Bankr.D.Mass.1995) (debtor's former wife was not insider, even before divorce decree became final, where divorce was particularly acrimonious and transfers in question were coerced). By comparison, a former spouse is not related to the other spouse by either affinity or consanguinity; thus, a former spouse cannot be considered a "relative" within the meaning of those classes of persons deemed to be "insiders" under § 101(31). *Miller v. Schuman (In re Schuman),* 81 B.R. 583, 585 (9th Cir. BAP 1987). As a result, a bald assertion that a transfer was made to a former-spouse does not subject that transaction to the one (1) year preference provided for in § 547(b)(4)(B). Conversely, merely because a transfer was made to a former spouse does not mean that such a transfer automatically falls outside the scope of the one (1) year preference period. This is because the definition of the word "insider" reveals that it is subject to the language "includes," which, under the rules of construction applicable to the Bankruptcy Code, is not exclusive. Specifically, 11 U.S.C. § 102(3) states that the terms " 'includes' and 'including' are

not limiting." Consequently, persons, such as former spouses, may be subject to the "insider" definition of § 101(31) even though their relationship with the debtor is not specifically included within the list of those capacities automatically subject to the "insider" status of § 547(b)(4)(B). *See, e.g., In Matter of Weaver Potato Chip Co., Inc.,* 243 B.R. 737, 740–41 (Bankr.D.Neb. 2000).

In determining what class of persons or other entities should be deemed to be insiders, even though they are not specifically delineated as such under § 101(31), this Court has adopted, as have other bankruptcy courts, the test set forth in the legislative history of the statute which holds that an "insider" is "one who has a sufficiently close relationship with a debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor." *Hunter v. Pool Pals Mfg., Inc. (In re Benson),* 57 B.R. 226, 230 (Bankr.N.D.Ohio 1986); *In re Babcock Dairy Co. of Ohio, Inc.,* 70 B.R. 662, 667 (Bankr.N.D.Ohio 1986); H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 312 (1977), reprinted in U.S.Code Cong. & Admin.News, 1978, pp. 5787, 5963, 6269. In determining the closeness of the relationship, the essential question is the degree to which the transferee is able to exert control or influence over the debtor. *Miller v. Schuman (In re Schuman),* 81 B.R. 583, 586 (9th Cir. BAP 1987). In this respect, and in the circumstance where the alleged "insider" is a former spouse, the Court finds that when determining the closeness of the parties' relationship, the following considerations are relevant:

The length of the parties' marriage;

the length of time between the termination of the marriage and the preferential transfer;

whether the parties, after the termination of their marriage, maintain any sort of business relationship together;

the extent to which the parties' divorce was adversarial in nature;

whether the parties continued to live together and/or share living expenses;

the time between the parties' physical separation and divorce;

the extent to which the parties' marital assets and liabilities continue to be intertwined.

With respect to the above elements, the Trustee alleges that an "insider" relationship should be found to exist on the basis that the Debtor and the Defendant continued to live together and share living expenses after their marriage ended. However, while the Court agrees that such a situation, if true, would be very indicative of an "insider" relationship, the Court, on this evidence alone, is not persuaded that the Trustee has met his requisite burden under 11 U.S.C. § 547(b)(4)(B). Simply put, two former spouses living together and sharing living expenses does not, standing alone, establish the existence of an "insider" relationship. In addition, when giving the Defendant the benefit of all reasonable inference, the record in this case does not necessarily support a finding that the Debtor and the Defendant actually continued to live together and share living expenses after their marriage ended. In particular, no affidavits or other extrinsic evidence was offered to the Court to support this particular assertion, and thus it appears that the Trustee's allegation of the Debtor and the Defendant's living arrangement stems solely from the provisions of the Parties' entry of divorce which expressly permitted such an arrangement. Accordingly, for these reasons, the Court, on the issue of the Defendant's status as an "insider" under 11 U.S.C. § 101(31),

must deny the Trustee's Motion for Summary Judgment.

**The Debtor's Status as Insolvent**

 A preference is only avoidable under § 547(b) if, at the time the transfer was made, the debtor was insolvent. 11 U.S.C. § 547(b)(3). For purposes of § 547(b), insolvency is a financial condition which exists when the sum of the debtor's debts is greater than the value of all of the debtor's property.[3] With respect to § 547(b)(3), a debtor is presumed to be insolvent during the ninety (90) day period immediately preceding the date the debtor files for bankruptcy relief. 11 U.S.C. § 547(f). However, beyond that time period, the Trustee bears the burden to establish that the debtor was insolvent at the time the transfer was made. 11 U.S.C. § 547(g). In accordance with these statutory sections, the Court, given that the Defendant has not introduced any evidence concerning the solvency of the Debtor, must find that the Trustee, vis-a-vis the Debtor's last transfer of Three Thousand dollars ($3,000.00), has met his burden, as a matter of law, under 11 U.S.C. § 547(b)(3); this transfer, as previously pointed out, clearly having occurred within ninety (90) days of the filing of the Debtor's bankruptcy petition. On the other hand, pursuant to § 547(g), the Trustee must put forth affirmative evidence tending to establish that the Debtor was insolvent at the time she made her first two transfers to the Defendant as these transfers clearly occurred outside the ninety (90) day period preceding the filing of the Debtor's bankruptcy petition.

 In support of his assertion that the Debtor was insolvent at the time she made her first two transfers to the Defendant, the Trustee attached an affidavit to his Motion for Summary Judgment in which, in his capacity as a bankruptcy trustee, he states: "... I have reviewed the Schedules and Statement of Affairs of the Debtor and have a good faith basis to believe that the Debtor was insolvent from and after June 1, 1999[.]" The Court, however, after considering this statement in light of the standard set forth for a motion for summary judgment, does not find that such a statement is sufficient to establish the Trustee's burden under 11 U.S.C. § 547(b)(3). This decision rests upon the fact that the Trustee's reference date of June 1, 1999 is almost one (1) full year prior to the filing of the Debtor's bankruptcy petition. As a result, the Court, when giving the Defendant the benefit of all reasonable inferences, finds that the Debtor's financial condition on June 1, 1999 is too far removed for the Trustee to have had an accurate picture of the Debtor's financial condition on the date she made the first two of her transfers to the Defendant. Further supporting this conclusion is the fact that a divorce, in many instances, precipitates the deterioration of a debtor's financial condition. Thus, in this case, since the Debtor's divorce occurred well after the Trustee's June 1, 1999 assessment date, this date would not necessarily have been indicative of the Debtor's financial condition at the time she made her transfers to the Defendant. Accordingly, for these reasons, the Court cannot find, for purposes of the Trustee's Motion for Summary Judgment, that the Debtor was "insolvent" within the meaning of 11 U.S.C. § 547(b)(3) at the time she

---

**3.** The term "insolvent" is specifically defined by the Bankruptcy Code and means, "with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation ... [.]" 11 U.S.C. § 101(32).

accomplished her first two transfers to the Defendant.

In conclusion, the Court finds that the Trustee has established that all three (3) transfers made by the Debtor to the Defendant were done on account of a debtor-creditor relationship, as is required under 11 U.S.C. § 547(b)(1)/(2). With respect to the first two transfers made by the Debtor to the Defendant, however, the Court finds that genuine issues of material fact exist with respect to the both the "insider" requirement of § 547(b)(4)(B) and the "insolvency" requirement of § 547(b)(3). In contrast, the Court finds that with respect to the Debtor's last transfer of Three Thousand dollars ($3,000.00), the Trustee has sustained his burden under both §§ 547(b)(4) and 547(b)(3). Accordingly, with respect to this transfer, the Court finds that the Trustee, as a matter of law, is entitled to avoid this transfer for the benefit of the Debtor's bankruptcy estate. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Motion for Summary Judgment submitted by the Plaintiff, John J. Hunter, Trustee, be, and is hereby, GRANTED in part and DENIED in part.

It is **FURTHER ORDERED** that the Three Thousand Dollar ($3,000.00) transfer made by the Debtor, Danelle A. Dupuis, to the Defendant, Geoffrey A. Dupuis, be, and is hereby, AVOIDED pursuant to 11 U.S.C. § 547(b).

It is **FURTHER ORDERED** that Judgment be, and is hereby, entered against the Defendant, Geoffrey A. Dupuis, in the amount of Three Thousand Dollars ($3,000.00).

It is **FURTHER ORDERED** that the issues not disposed of on the Trustee's Motion for Summary Judgment, be, and are hereby, set for a Trial on Wednesday, May 9, 2001, at 1:30 P.M., in Courtroom No. 1, Room 119, United States Courthouse, 1716 Spielbusch Avenue, Toledo, Ohio.

It is **FURTHER ORDERED** that on, or before Monday, April 30, 2001, the Parties exchange and file with the Court pre-trial memoranda, lists of witnesses, lists of exhibits, and stipulations.

It is **FURTHER ORDERED** that the failure to file any of the above items may result in the Trial being continued, witnesses or exhibits not being introduced into Trial, or sanctions being imposed by the Court.