**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROBERT F. ANDERSON, Trustee in
Bankruptcy for Plantation Ford
Tractor, Incorporated,
<u>Plaintiff-Appellant,</u>

v.

ROBERT R. KNOTH; FIRST FEDERAL
SAVINGS AND LOAN ASSOCIATION, of             No. 97-2511
Charleston,
<u>Defendants-Appellees,</u>

and

JOHN F. CURRY, as Trustee for
Robert R. Knoth,
<u>Defendant.</u>

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
C. Weston Houck, Chief District Judge.
(CA-94-1924-2)

Argued: October 30, 1998

Decided: December 1, 1998

Before WILLIAMS and MOTZ, Circuit Judges, and
STAMP, Chief United States District Judge for the
Northern District of West Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Henry Flynn Griffin, III, ANDERSON & ASSOCIATES, P.A., Columbia, South Carolina, for Appellant. David Brian Wheeler, HOLMES & THOMSON, L.L.P., Charleston, South Carolina, for Appellees. **ON BRIEF:** Trudy Hartzog Robertson, HOLMES & THOMSON, L.L.P., Charleston, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Robert F. Anderson, trustee in bankruptcy for Plantation Ford Tractor, Inc., brought this action against Robert R. Knoth and First Federal Savings and Loan Association of Charleston. The trustee sought to recover allegedly fraudulent and preferential transfers by Plantation to Knoth and First Federal, to have Knoth's secured claim against Plantation subordinated to Plantation's other creditors, and to pierce Plantation's corporate veil and thus hold Knoth liable for all of the debts of Plantation. The district court granted some, but not all, of the relief requested. The trustee appeals, asserting that the district court erred in refusing: (1) to void preferential transfers made by Plantation to First Federal during the year prior to the filing of the bankruptcy petition; (2) to hold that Knoth's advances to Plantation constituted capital contributions; and (3) to pierce Plantation's corporate veil. We affirm.

Knoth and H. Lee Ray incorporated Plantation in South Carolina on August 28, 1989, as a closely held subchapter "S" corporation. Knoth and Ray were the sole incorporators, officers, and shareholders throughout the corporation's existence. Plantation sold and serviced Ford tractors and other equipment.

2

On September 14, 1989, Knoth borrowed $800,000 from First Federal and subsequently lent these funds to Plantation in exchange for a security interest in Plantation's personal property. The loan from First Federal to Knoth was guaranteed by Ray and secured by land owned by Knoth. In all other respects, the terms of the loan from Knoth to Plantation, e.g. the amount of the monthly payments, were similar to the terms of the loan from First Federal to Knoth. Plantation used $740,000 of the loan proceeds to purchase certain assets from Steen Ford Tractor, and used the remaining $60,000 as operating capital. Ray ran the corporation's day-to-day operations, made decisions on payments to Plantation's creditors and from 1989 until 1991 received an annual salary of $70,000. Knoth provided financial support, met with Ray and others to discuss the status of the business, and prior to the Bankruptcy filing, was not paid a salary. The only corporate meeting at which minutes were taken occurred in September 1989. Thereafter, Knoth and Ray met from time to time to discuss the business. Meetings were not held on a regular basis.

One week after the start of business in September 1989, Hurricane Hugo hit South Carolina, generating a large volume of business for Plantation during the next four or five months. Plantation reported a profit of $82,220 for 1989 and accordingly distributed $15,000 each to Knoth and Ray. Thereafter, Plantation's business declined. In early 1990, it began paying its bills late and Knoth started making short-term loans to Plantation, which it paid back when there was money to do so. Plantation's 1990 tax return stated a loss of $62,357. Its 1991 return indicated a loss of $1,562,253. Short-term loans made by Knoth to Plantation during this period did not stop the decline of the business. On July 17, 1992, Plantation filed for bankruptcy.

Plantation's liabilities greatly exceeded its assets throughout the year prior to its filing for bankruptcy. During that period, Knoth lent Plantation $371,360.00 and was paid back $258,562.58. Plantation also made a number of payments to First Federal during that year. These payments were made in a fashion similar to payments made by Knoth on other loans that Knoth had with First Federal. With the exception of a $100,000 payment on January 31, 1992, all of Plantation's payments to First Federal corresponded to the monthly payments that were due to First Federal on the original $800,000 loan. The source of the $100,000 payment was a $270,000 loan that Planta-

3

tion obtained from Charleston Capital Corporation the same day. In exchange for Plantation's agreement to make this $100,000 payment, First Federal released ten acres of land owned by Knoth, which he had pledged as part of the collateral to First Federal on the original $800,000 loan. Knoth then pledged the ten-acre parcel to Charleston Capital as collateral for the new $270,000 loan to Plantation.

After a three-day trial, the district court held that Plantation was undercapitalized from the start and that Knoth had secured an unfair advantage over other creditors by structuring his cash contributions to Plantation as loans rather than as equity capital. Consequently, the court equitably subordinated Knoth's post-petition claims on the loan notes to the claims of the other creditors.

The district court also found that the transfers made to Knoth and First Federal during the year prior to Plantation filing for bankruptcy constituted preferences under 11 U.S.C. § 547. However, the court concluded that the trustee could not avoid the transfers to First Federal because those transfers came within § 547(b)'s exception for transfers made in the ordinary course of business. The court reasoned that all payments other than the $100,000 payment corresponded to regular monthly payments. See In re Jeffrey Bigelow Design Group, Inc., 956 F.2d 479 (4th Cir. 1992). It explained that the $100,000 transfer was permissible because it did not deplete Plantation's existing capital, but was obtained from the new $270,000 loan from Charleston Capital Corporation.*

_____

*As the district court noted, the $100,000 payment from Plantation to First Federal did not diminish the funds available to the debtor. Nor did it enable First Federal to obtain more from the debtor than it could have otherwise obtained during the bankruptcy proceedings; First Federal could have foreclosed on the ten-acre property that secured its loan to Knoth. The release of the ten-acre property by First Federal enabled Plantation to receive the $270,000 loan from Charleston Capital. Immediately after that loan, Plantation had $170,000 (i.e., $270,000 minus the $100,000 payment to First Federal) more than what was available prior to the loan to pay its creditors. Although not explicitly stated by the district court, this transaction fits within § 547(c)(1)'s "contemporaneous exchange for new value" exception to avoidable preferences.

4

The court rejected the trustee's argument that Knoth's loans to Plantation should be considered capital contributions and that, therefore, the repayments made to Knoth and First Federal were unlawful distributions pursuant to South Carolina Code § 33-6-400(c). The court reasoned that none of the payments had the earmarks of a distribution, and that they were, in fact, repayments of loans.

Finally, the court refused to pierce the corporate veil of Plantation and hold Knoth personally liable. The court applied the test articulated in Dewitt Truck Brothers v. W. Ray Fleming Fruit Co., 540 F.2d 681 (4th Cir. 1976), and concluded that the trustee had not presented any evidence (other than the initial undercapitalization) of independent acts by Knoth in which he disregarded the creditors' claims to the corporate property in favor of himself.

We have carefully considered the arguments, briefs, record, and applicable law and affirm on the basis of the well-reasoned opinion of the district court. See Anderson v. Knoth, C.A. No. 2:94-1924-2 (September 30, 1997).

AFFIRMED

5