TRAXLER, Chief Judge,
dissenting:
Because I believe Hanover was not entitled to summary judgment on its new-value defense, I respectfully dissent.
The Bankruptcy Code’s preference section serves two goals. First, it prevents companies “from racing to the courthouse to dismember the debtor during his slide into bankruptcy.” Harmon v. First Am. Bank of Md. (In re Jeffrey Bigelow Design Group, Inc.), 956 F.2d 479, 487 (4th Cir. 1992) (internal quotation marks omitted). And second, it protects “equality of distribution among creditors.” Id. (internal quotation marks omitted).
Section 547(c) provides exceptions for certain preferential transfers, the avoidance of which would not further the purposes of § 547(b). See 11 U.S.C. § 547(b), (c). Section 547(c)(1) provides that a transfer cannot be avoided “to the extent [it] was ... intended by the debtor and the creditor to or for whose benefit [it] was made to be a contemporaneous exchange for new value given to the debtor; and [it was] in fact a substantially contemporaneous exchange.” 11 U.S.C. § 547(c)(1) (emphasis added). The statute defines “new value,” as is relevant here, as “money or money’s worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee.” 11 U.S.C. § 547(a)(2).
The purpose of the § 547(c)(1) exception is “to encourage creditors to continue to deal with troubled debtors without fear that they will have to disgorge payments received for value given.” Collier on Bankruptcy ¶ 547.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2012). As the legislative history demonstrates, § 547(c)(1) was intended to address the “generic problem that those on the verge of bankruptcy still need to buy things and the fact that checks are used (with a brief gap between purchase and payment) ought not render the payment avoidable as one made for an antecedent debt.” United Rentals, Inc. v. Angell, 592 F.3d 525, 529 (4th Cir.2010) (alterations and internal quotation marks omitted). “Protecting contemporaneous exchanges for new value from avoidance does not harm the preference section’s goal of protecting the equality of distribution among the debtors because such exchanges do not diminish the size of the debtor’s estate.” Id.
The Trustee argues that “Hanover did not sustain its burden of establishing Hanover’s contemporaneous exchange defense to the Trustee’s $1.375 million preferential transfer claim.” Appellant’s Brief at 55. The Trustee contends that even assuming that the New Contracts constituted new value, “Hanover failed to present evidence of the extent of the new value.” Id. I agree.
As stated above, the statute defines “new value,” as is relevant here, as “money or money’s worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee.” 11 U.S.C. § 547(a)(2). Under the New Contracts, ESA did not stand to receive any goods, services, new credit, or any release of property. It stood to *402 receive only money. But as the Trustee points out, ESA never received any money under the New Contracts since ESA did not complete the work.
Hanover does not argue, and could not argue, that it presented evidence that the New Contracts were goods or services that could be sold for at least $1,375 million in the marketplace. Rather, Hanover contends that ESA received “new value” of at least $1,375 million in the form of the New Contracts because ESA expected to make that much profit by eventually completing its work under those contracts. See J.A. 584 (Cole affidavit). But regardless of what Hanover hoped to eventually receive, what it actually received was only a conditional promise to pay ESA money at some point in the future. Section 547, however, requires that the debtor’s receipt of money, goods, services, new credit or property release be substantially contemporaneous with the debtor’s payment.[1] See In re Teligent, Inc., 315 B.R. 308, 317 (Bankr. S.D.N.Y.2004) (explaining that “[a] promise of future services ... does not constitute ‘new value.’”); cf. Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 204, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) (discussing “new value” exception to absolute priority rule and stating that “[u]nlike ‘money or money’s worth,’ a promise of future services cannot be exchanged in any market for something of value to the creditors today ”).
Indeed, the facts of this very case demonstrate why receipt of a conditional promise for payment at some indefinite future time does not constitute receipt of “new value” in the amount of the promised payment.[2] In a “new value” transaction, the debtor’s payment does not reduce the size of the estate because the money paid by the debtor is replaced by money, goods, services, new credit, or property releases of equivalent value. See Angell, 592 F.3d at 529. Here, in contrast, Hanover successfully obtained $1.375 million from the estate without replacing it with equal value.[3] In so doing, Hanover jumped ahead of ESA’s other unsecured creditors and received far more payment via the letter of credit than it otherwise could have received in bankruptcy. Thus, the bankruptcy court erred, in my view, in concluding that Hanover established the new-value defense.[4]
I therefore would reverse the district court order affirming the bankruptcy court.

. Hanover also argues that the bonds themselves constituted new value of at least $1,375 million to ESA because the face value of the bonds exceeded that amount. However, the government, not ESA, was the beneficiary on the bonds. If Hanover proved any new value to ESA, it was limited to $74,071, the premium ESA paid for the bonds.

. Cole’s affidavit supports Hanover’s factual premise that ESA expected to make a profit of more than $1,375 million by performing the work under the New Contracts, but it does not establish the legal conclusion ESA actually received at least $1,375 million in new value.

. ESA’s unrealized expectation that it would profit at some point in the future under the New Contracts shows that the contracts may have had “value” in traditional business/commercial parlance. ESA's expectation did not replenish the estate, however, and thus the New Contracts did not amount to "new value” within the meaning of § 547(c).

. For the reasons stated in the majority opinion, I also believe the bankruptcy court erred in concluding that Hanover established the earmarking defense. See ante at 394-97. Additionally, I do not read the bankruptcy court order as ruling for Hanover on equitable grounds independent of the earmarking and new-value defenses.